# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| THERESA SMITH,<br><br>     Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC.,<br><br>     Defendant. | CIVIL ACTION NO.<br><br>6:25-CV-00017-ACC-DCI |

## DEFENDANT'S RESPONSE TO THIS COURT'S JANUARY 8, 2025 ORDER TO SHOW CAUSE

Defendant, Frontier Airlines, Inc. ("Frontier"), by and through its undersigned counsel, hereby files its Response to the Court's Order to Show Cause (Doc. 6; OTSC) dated January 8, 2025, and states as follows:

1. On or about September 11, 2024, Plaintiff Theresa Smith ("Plaintiff") filed a Complaint against Frontier alleging race and disability discrimination and retaliation in violation of the Florida Civil Rights Act ("FCRA"). *See* Notice of Removal (Doc. No. 1) at Ex. A.

2. On December 16, 2024, Plaintiff served Frontier with a copy of the Summons and Complaint. *See* Notice of Removal at ¶ 8.

3. On January 6, 2025, Frontier removed this matter to this Court on the basis of diversity of jurisdiction, as the parties are citizens of different states and the amount in controversy exceeds $75,000. *See id.*

4. On January 8, 2025, this Court issued a show cause order requiring Frontier to provide evidence of Plaintiff's citizenship and that the amount in controversy requirement is satisfied. *See* OTSC.

For the reasons set forth below, this matter should remain in the U.S. District Court for the Middle District of Florida, Orlando Division, on the basis of diversity jurisdiction.

## **MEMORANDUM OF LAW**

In the Order dated January 8, 2025, this Court examines whether Frontier established diversity jurisdiction in its Notice of Removal (Doc. 6). While recognizing that Plaintiff resides in the State of Florida, this Court stated Frontier must provide evidence of Plaintiff's citizenship in the State of Florida. (*Id.*). The Court also required Frontier to provide proof that the amount in controversy requirement for diversity of citizenship is satisfied. (*Id.*).

**I. DIVERSITY OF CITIZENSHIP EXISTS BECAUSE EVIDENCE SUPPORTS PLAINTIFF IS A CITIZEN OF FLORIDA**

Citizenship of a natural person is established by domicile. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled). A person's domicile is established by physical presence and intent to remain

indefinitely. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002). Courts consider a variety of factors to determine domicile, including where the plaintiff lived and worked, as well as where the plaintiff is licensed to drive, has an automobile registered, or the address listed on tax documents. *See Taylor v. Am. Heritage Church Fin., Inc.*, 2010 WL 2889694, *1-2 (M.D. Fla. July 19, 2010). Courts look to similar factors in determining a person's intent to remain in a state, including employment records, voter registration, driver's license, and sworn statements of intent. *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021); *see also Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249 (11th Cir. 2005) (Plaintiff submitted documents including, but not limited to, his driver's license and voter's registration to show the magistrate judge that he was domiciled in Nevada). The Court may also rely on pleadings and affidavits to determine citizenship. *Taylor*, 2010 WL 2889694 at *1-2.

Here Plaintiff is a citizen of Florida and intends to remain in Florida. Frontier's Notice of Removal establishes that Plaintiff maintains a physical residence in the State of Florida. (Complaint, ¶ 3). Plaintiff's Complaint supports that Plaintiff had, and continues to have, a physical presence in Florida as Plaintiff alleges that she works at Frontier, filed the original action in the State of Florida in Orange County because Plaintiff resides and works at Frontier in Florida. (*Id.* ¶¶ 3, 6). Also, Frontier's records support that the residential address they have for

3

Plaintiff is in Orange County, Florida. (Exhibit B, Declaration of Marcia Attea, Ex. 3 to Attea Decl.).

Recently, on January 9, 2025, Defendant's counsel conducted a background search of Plaintiff utilizing LexisNexis SmartLinx Person Report service. (Ex. A, Declaration of Janell M. Ahnert, ¶ 3, Ex. 1 to Ahnert Decl.). According to that report, Plaintiff currently owns and resides at property located at 6532 Abbeydale Ct Orlando, Florida 32818-8849 in Orange County, Florida, which she has lived at since October of 2001. (Exhibit A, Declaration of Janell M. Ahnert, ¶ 4, Ex. 1 to Ahnert Decl. pp. 3-4, 18-19).

Furthermore, Plaintiff currently maintains a Florida drivers' license, which was last issued on August 3, 2017 and does not expire until October 2025. (Ahnert Decl. ¶ 5, Ex. 1 to Ahnert Decl. p. 15). Plaintiff registered to vote in the State of Florida on July 7, 2000, her registration is still active, and her voter registration records show that Plaintiff resides at the same 6532 Abbeydale Ct Orlando, Florida 32818-8849 address. (Ahnert Decl. ¶ 6, Ex. 1 to Ahnert Decl. p. 17).

Therefore, "domicile," or "the place of [her] true, fixed, and permanent home and principal establishment . . . .to which [she] has the intention of returning whenever [she] is absent therefrom" is in the State of Florida. *McCormick*, 293 F.3d at 1257-58. Based on the information pertaining to property owned by Plaintiff,

drivers' license records, and voter registration records, Plaintiff is a "citizen" of Florida for purposes of diversity jurisdiction.

Further, as recognized by the Court in its Order, Frontier is a not a "citizen" of Florida for purposes of diversity jurisdiction and is instead a "citizen" of Colorado. *See* OTSC. Accordingly, because Frontier is not a citizen of Florida for purposes of 28 U.S.C. § 1332(a)(1), there is complete diversity from Plaintiff, who, as explained above, is domiciled in Florida. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998) (To qualify for diversity jurisdiction, there must be complete diversity between the parties, which means Plaintiff may not be a citizen of the same state as Defendant).

## II. THE AMOUNT IN CONTROVERSY REQUIREMENT IS SUPPORTED BY THE EVIDENCE AND MET

Pursuant to 28 U.S.C. § 1332(a), diversity jurisdiction also requires the amount in controversy to exceed the sum or value of $75,000.00, and this Court is requesting Defendant to show that Plaintiff's alleged damages are over this amount. Plaintiff's Complaint alleges damages for her three claims of race discrimination, disability discrimination, and retaliation of each being "in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest," for over $150,000.00 in damages, exclusive of costs and interest, well over the $75,000.00 amount in controversy requirement. *See* Notice of Removal (Doc. No. 1) at Ex. A at ¶¶ 2-3, 5-8.

Even so, where the initial pleading does not demand a specific overall sum, the removing party may assert the amount in controversy. 28 U.S.C. § 1446(c)(2)(A). The Supreme Court has held a removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and need not submit evidence in support thereof. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). In assessing the amount in controversy, the Court considers the value of the plaintiff's claims by estimating the amounts that "will be put at issue during the litigation," and not how much plaintiff is ultimately likely to recover. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (citation omitted) (explaining that "the plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover"). In conducting its analysis, the Court may rely upon its "judicial experience and common sense," rather than a plaintiff's self-serving representations that the value of her claims is indeterminate. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010).

A plain reading of Plaintiff's Complaint, together with the jurisdictional allegations, demonstrate the amount in controversy exceeds $75,000, and thus, meets the jurisdictional amount required for removal based on diversity. *See* 28 U.S.C. §

1332(a). Specifically, Plaintiff alleges in the Complaint she was discriminated against and retaliated against based on her race and disability including that she was allegedly denied an accommodation request and not given eleven different promotions from October 2018 to October 2021. *See* Notice of Removal (Doc. No. 1) at Ex. A at ¶¶ 11-12. Plaintiff claims she applied for each of these eleven positions and was denied each promotion, and "[t]he positions were all given to employees outside Plaintiff's protected class, African American, including but not limited to: Cindy Alas, Anthony LuTurco, Justin McKeon, and Scott O'Dell." *See id.* at ¶ 11.

Plaintiff claims to have suffered damages, including emotional distress and a deprivation of her rights. *See id.* at ¶¶ 24, 33, 41, 48, and prayer for relief. Plaintiff seeks to recover back pay, front pay, compensatory damages, punitive damages, and attorneys' fees and costs. *Id.* Compensatory damages, lost wages, punitive damages, and attorneys' fees are all recoverable pursuant to Section 760.11(5), Florida Statutes.

As to lost wages, back pay should be calculated from the time of the alleged adverse employment action through the date of removal or trial. *E.g., Pope v. 20/20 Commc'ns, Inc.*, 2015 WL 5165223, at *2 (M.D. Fla. Sept. 2, 2015) (back-pay damages calculated through proposed date of trial); *Hendry v. Tampa Ship, LLC*, 2011 WL 398042, *2 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Morgan*

*v. Sears, Roebuck & Co.*, 2012 WL 2523692, at *2 (S.D. Fla. June 29, 2012) (calculating back pack from time of termination through expected trial date, noting that court may use its "judicial experience and common sense" in making that determination); *Penalver v. N. Elec., Inc.*, 2012 WL 1317621, at *3 (S.D. Fla. Apr. 17, 2012) (calculating back pay through the "first possible trial date" approximately ten months after removal); *Messina v. Chanel, Inc.*, 2011 WL 2610521, at *2 (S.D. Fla. July 1, 2011) (including back pay through estimated time of trial eighteen months in the future).

For the purposes of calculating back pay, Plaintiff's alleged adverse action is the promotions she was allegedly denied. *See* Notice of Removal (Doc. No. 1) at Ex. A at ¶¶ 11-12. Upon review of Frontier's records, Plaintiff applied to thirteen different Frontier positions during her employment with Frontier, the first application being on January 20, 2021, and the last on August 12, 2022. (Attea Decl. at ¶¶ 3-4). On Plaintiff's first application for a Regional Manager, Airport Customer Service position, Plaintiff stated that her salary expectations for the position she was applying to were $40 per hour, which is within the salary range for the position. (*Id.* at ¶ 5, Ex. 1 to Attea Decl.; *see also* Exhibit C, Declaration of Antonio Garcia ¶¶ 3, 6, Ex. 1 to Garcia Decl.). Plaintiff's application for this position was declined on January 25, 2021. (Attea Decl. at ¶ 5, Ex. 1 to Attea Decl.; Garcia Decl. at ¶¶ 3, 7, Ex. 1 to Garcia Decl.). Shortly after, on February 14, 2021, Plaintiff applied to

8

another position of Inflight Base Supervisor (TPA). (Attea Decl. at ¶ 6, Ex. 2 to Attea Decl.; Garcia Decl. at ¶¶ 3, 6, Ex. 2 to Garcia Decl.). On this application, Plaintiff stated that her salary expectations for the position were $60,000 per year, within the pay range for the position. (Attea Decl. at ¶ 6, Ex. 2 to Attea Decl.; Garcia Decl. at ¶¶ 3, 6, Ex. 2 to Garcia Decl.). On the other applications Plaintiff completed going forward through August 12, 2022 that requested salary expectations, Plaintiff put similar or same salary expectations of $55,000-$60,000 per year. (Attea Decl. at ¶ 7). Plaintiff went on a leave of absence on October 7, 2022 and has not returned, meaning any back pay for Plaintiff stopped on that date. (*See id.* at ¶ 8, Ex. 3 to Attea Decl.).

From February 1, 2021 to October 7, 2022 (after Plaintiff's first application was declined to when she went on a leave of absence), Plaintiff's gross pay totaled $60,811.61. (*See id.* at ¶ 9, Ex. 4 to Attea Decl.). Alternatively, if Plaintiff would have been given the positions she applied to at $40.00 per hour or $55,0000.00-$60,000.00 annually, she would have a gross pay ranging from approximately $96,404.29-$139,609.60 (without accounting for any raises and bonuses) during the same time period of February 1, 2021 to October 7, 2022. (*See id.* at ¶¶ 5-7, Exs. 1 & 2 to Attea Decl.). Therefore, Plaintiff's back pay is an estimated $35,592.68-$78,797.99, without any raises and bonuses from the alleged denied promotions

being taken into consideration and without considering benefits—which would inevitably further increase the back pay calculation to much higher amounts.

Adding attorneys' fees, compensatory damages, and punitive damages, which can also be considered in determining the amount in controversy—and which relying on "good sense and experience," will together exceed any remaining amount needed (if any)—the amount in controversy requirement of $75,000.00 is met in this case. *See* Notice of Removal (Doc. No. 1) at Ex. A at ¶¶ 24, 33, 41, 48, and prayer for relief; *see also Cowan v. Genesco, Inc.*, No. 3:14-CV-261-J-34JRK, 2014 WL 3417656, at *3 (M.D. Fla. July 14, 2014) ("[W]here the parties and the court know from their exercise of good sense and experience that the claim[s] exceed $75,000[,][t]here is no point in writing a law review article on the subject."); *Awad v. Cici Enterprises*, 2006 U.S. Dist. LEXIS 71998, at *3-4 (M.D. Fla. Oct. 3, 2006) (compensatory and punitive damages and attorneys' fees included in amount in controversy in diversity cases); *Penalver v. N. Elec., Inc.*, No. 12-80188-CIV, 2012 WL 1317621 (S.D. Fla. Apr. 17, 2012) (including reasonable attorney's fees in amount of controversy calculation); *Brown v. Cunningham Lindsey U.S., Inc.*, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005) ("[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered.").

This Court, like this Court found in *Cowan v. Genesco, Inc.*, should "ha[ve] no difficulty in determining that the jurisdictional threshold is met." 2014 WL 3417656, at *4. Specifically, this Court in *Cowan*, when considering very similar circumstances and issues, stated:

> In addition to almost $45,000 in back pay, Plaintiff seeks compensatory and punitive damages, as well as attorney's fees. The FCRA places no limit on the amount of compensatory damages and allows up to $100,000 in punitive damages. *See* Fla. Stat. § 760.11(5). Moreover, the FCRA authorizes an award of attorney's fees such that the Court may properly consider such fees in assessing the amount in controversy. *See Federated Mut. Ins. Co. v. McKinnon Motors, L.L.C.*, 329 F.3d 805. 808 n.4 (11th Cir. 2003) ("[A]ttorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract."). In light of the nature of Plaintiff's claims and the allegations in the Complaint, the Court finds in its "judicial experience and common sense," that the value of Plaintiff's racial and sexual discrimination claims, as pled, more likely than not exceed the minimum jurisdictional requirement. *See Roe*[ *v. Michelin N. Am., Inc.*], 613 F.3d [1058,] 1062[ (11th Cir. 2010)]. The Court's independent appraisal is further supported by the amount of such damages awarded in similar FCRA cases, as well as Plaintiff's failure to stipulate otherwise. *See Penalver v. N. Elec., Inc.*, No. 12–80188–CIV, 2012 WL 1317621, at *3 (S.D. Fla. Apr.17, 2012); *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, No. 3:10–cv–615–J–32JRK, 2010 WL 6790539, at *3 (M.D. Fla. Nov.5, 2010) ("A 'plaintiff's refusal to stipulate or admit that [he] is not seeking damages in excess of the requisite amount should be considered when assessing the amount in controversy.'" (quoting *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1380 (M.D. Fla.2009)); *Alshakanbeh v. Food Lion, LLC*, No. 3:06–cv–1094–J–12HTS, 2007 WL 917354, at *2 (M.D. Fla. Mar. 23, 2007). In concluding that over $75,000 is in controversy, the Court is not finding that Plaintiff will actually recover such amounts, only that, he *could*. *See McDaniel*[ *v. Fifth Third Bank*], 2014 WL 2525192, at *3[ (11th Cir. 2014)]. In light of the foregoing, the Court concludes that this Court has diversity jurisdiction over the action…"

11

*Id.*

Like in *Cowan*, the requisite amount in controversy is met and well exceeded, as the cumulative value of Plaintiff's FCRA claims, though vigorously contested by Defendant, involve an amount in controversy well over $75,000.00, exclusive of interests and costs, and Defendant has sufficiently shown cause to support this.

### III. CONCLUSION

For the reasons expressed herein and in Defendant Frontier's Notice of Removal, there is complete diversity between the parties and the amount in controversy requirement is met, and this Court, therefore, has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

WHEREFORE, Defendant Frontier Airlines, Inc., respectfully requests this Court retain jurisdiction of this matter.

*s/ Janell M. Ahnert*
Janell M. Ahnert (FL Bar 0123161)
jahnert@littler.com
LITTLER MENDELSON, P.C.
420 20th Street North, Suite 2300
Birmingham, AL  35203-3204
Telephone: 205.421.4700
Facsimile: 205.421.4699

Counsel for Defendant Frontier Airlines, Inc.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on this the 22nd day of January 2025, by electronically filing the same with the CMECF e-filing system, which will send electronic notice of same to the following:

Marie A. Mattox
Katherine Viker
Marie A. Mattox, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
marie@mattoxlaw.com
katherine@mattoxlaw.com
marlene@mattoxlaw.com
michelle@mattoxlaw.com
shannon@mattoxlaw.com

                                  *s/ Janell M. Ahnert*
                                  OF COUNSEL